# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6360 | **DATE** | 1/4/2002 |
| **CASE TITLE** | Purizer Corporation vs. Battelle Memorial Institute | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss is denied (4-1). Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | JAN 0 7 2002 | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION **DOCKETED**

JAN 0 7 2002

| | |
|---|---|
| PURIZER CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BATTELLE MEMORIAL INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

01 C 6360

Judge George W. Lindberg **DOCK**

JAN 0 7 2002

## MEMORANDUM OPINION AND ORDER

Defendant Battelle Memorial Institute has moved pursuant to Federal Rule of Civil

Procedure 12(b)(6) to dismiss plaintiff's complaint. For the reasons stated below, the motion to

dismiss is granted in part and denied in part.

### I. Factual Background

In considering a motion to dismiss, the court must accept as true all well-pleaded facts

and must draw all reasonable inferences from those allegations in plaintiff's favor. MCM

Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 972 (7th Cir. 1995). According to

the allegations in the complaint, in 1996 plaintiff acquired the rights to a technology that had

previously been used to sterilize milk cartons (the "Purizer Vapor"). Plaintiff and defendant

entered into a written agreement on December 11, 1998, under which defendant agreed to

"provide a high standard of professional services on a best efforts basis" in performing research

on the Purizer Vapor. This research project included characterization of the Purizer Vapor, a

process which entailed describing the Purizer Vapor's chemical components and their

proportions. Defendant represented to plaintiff that the Purizer Vapor consisted of oxygen,

single oxygen, hydrogen peroxide and residual ozone, as well as more exotic components, such

as singlet oxygen and hydroxyl radicals. Defendant was compensated in cash and stock.

In 1999, plaintiff and defendant entered into other written agreements, under which defendant agreed to investigate the suitability of the Purizer Vapor for various applications, and to design and construct the apparatus for use in these applications. None of these projects was completed during 1999, but defendant represented to plaintiff that the Purizer Vapor was suitable for these applications and that it was remarkably effective in reducing bacteria and other pathogens to almost undetectable levels.

Plaintiff decided to prepare a business plan to use in attracting investors. Defendant actively participated in preparing the business plan, and a draft of the plan referred to defendant as plaintiff's partner. The business plan stated that based on research completed by defendant, the Purizer Vapor consisted of highly reactive molecular oxygen, hydrogen peroxide, and hydroxyl radicals. The draft plan also stated that defendant had verified that the Purizer Vapor is 10,000 to 100,000 times more effective than ozone or ultraviolet light for sterilization and decontamination. A revised version of the business plan, prepared in 2000, stated that the Purizer Vapor was five times more effective than ozone alone in air, and forty percent more effective than ozone alone in water. Final drafts of the business plan were circulated to defendant's project manager and his superior, with a request that they identify any inaccuracies; defendant did not identify any inaccuracies in the business plan's representations regarding the Purizer Vapor's effectiveness as compared to ozone.

Defendant's representatives made the same representations to various Purizer executives and marketing consultants through 1999 and 2000 that had appeared in the draft business plan. Plaintiff distributed the final version of the business plan to potential investors at presentations, including two presentations held at defendant's headquarters in Ohio. Defendant's project manager and his superior spoke at the Ohio presentations. Plaintiff raised $17 million from investors through sales of preferred stock.

On June 9, 2000, plaintiff and defendant executed a Master Research and Development Agreement. This contract terminated all then-existing contracts between plaintiff and defendant,

2

and provided that all future work by defendant was to be conducted under its terms.

During 2000, the applications of the Purizer Vapor then underway all either failed or otherwise did not live up to the representations made by defendant. An independent expert in ozone technology, retained by plaintiff, determined that the Purizer Vapor was composed of ozone and hydrogen peroxide, and that more exotic components such as singlet oxygen and hydroxyl radicals were either not present or so transitory as to be undetectable. The expert reported that the technique underlying the Purizer Vapor had been known for over thirty years. Plaintiff abandoned the commercialization of the Purizer Vapor.

On August 16, 2001, plaintiff filed this action, alleging fraud, negligent misrepresentation, breach of contract, and unjust enrichment. Jurisdiction is based in diversity of citizenship.

## II.   Motion to Dismiss Standard

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must consider "whether relief is possible under any set of facts consistent with the allegations of the plaintiff's complaint." Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999). That is, if it is possible to hypothesize a set of facts that would entitle the plaintiff to relief, consistent with the allegations in the complaint, dismissal under Rule 12(b)(6) is inappropriate. Graehling v. Village of Lombard, 58 F.3d 295, 297 (7th Cir. 1995).

## III.   Discussion

## A.   Choice of Law

As a preliminary matter, the court must determine which state's law applies to this case. Defendant argues that Ohio law controls. Plaintiff contends that Illinois law governs, but only cursorily addresses the question of choice of law in a brief footnote in its response to defendant's motion to dismiss.[1]

---

[1] The parties agree that the choice of law provision in their contract, specifying that Delaware law applies, does not control.

A court sitting in diversity must apply the choice of law rules of the state in which it sits – here, Illinois. ECHO, Inc. v. Whitson Co., 52 F.3d 702, 707 (7th Cir. 1995). Illinois follows the Restatement (Second) of Conflict of Laws in making choice of law decisions. Chapman & Assocs., Ltd. v. Kitzman, 739 N.E.2d 1263, 1269 (Ill. 2000). The Restatement uses the "most significant relationship test" to determine the applicable state law. See Spinozzi v. ITT Sheraton Corp., 174 F.3d 842, 844 (7th Cir. 1999) (tort); Palmer v. Beverly Enterprises, 823 F.2d 1105, 1107 (7th Cir. 1987) (breach of contract); Chapman & Assoc., Ltd., 739 N.E.2d at 1271 (unjust enrichment). Section 6 of the Restatement (Second) of Conflict of Laws sets forth general factors that courts consider in making choice of law decisions, which include the relevant policies of the forum and other interested states, the relative interests of those states in the determination of the particular issues, and the basic policies underlying the particular fields of law. Restatement (Second) of Conflict of Laws § 6(2) (1971). Neither party cites any policy applicable to the fields of law at issue here, or any policy or interest of Illinois or Ohio to support either party's position.

The Restatement also provides relevant factors governing choice of law issues in various specific areas of law. See, e.g., Restatement (Second) of Conflict of Laws §§ 148 (fraud and misrepresentation), 188 (contract), and 221 (restitution) (1971). As applied to plaintiff's fraud and negligent misrepresentation claims, factors relevant to the "most significant relationship" test include the place where the plaintiff acted in reliance on the defendant's representations; the place where the plaintiff received the representations; the place where the defendant made the representations; the domicile, residence, nationality, place of incorporation and place of business of the parties; the place where a tangible thing which is the subject of the transaction was situated; and the place where the plaintiff is to render performance under a contract which he has been induced to enter by the defendant's false representations. Restatement (Second) of Conflict of Laws § 148(2) (1971).

In this case, although the complaint does not say so, plaintiff presumably relied on

defendant's misrepresentations to some extent in Illinois, where its principal place of business is located.[2] All the misrepresentations for which the complaint specifies a location were made and received in Ohio.[3] Plaintiff is a Nevada corporation, with its principal place of business currently in Illinois; when its relationship with defendant began, plaintiff's principal place of business was in Utah. Defendant is organized under Ohio law, and maintains its principal place of business in that state. Finally, defendant's performance that is the subject of the misrepresentations took place in Ohio. The state with the most significant relationship to the events and parties is Ohio, and consequently, the court will apply Ohio law to the fraud and negligent misrepresentation claims.

In evaluating a choice of law issue relating to a breach of contract claim, the court must consider the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second) of Conflict of Laws § 188(2) (1971). In this case, the complaint does not specify the place of contracting and negotiation,[4] and the place of business of the parties is split between Illinois and Ohio. Thus, the place of performance becomes the critical factor, weighing in favor of Ohio. This result is consistent with the Restatement's treatment of choice of law issues relating to service contracts,[5] which provides that the law of the state where the services are to be rendered governs. See Restatement (Second) of Conflict of Laws § 196 (1971). Defendant performed its

---

[2] Plaintiff claims in its response to the motion to dismiss that it acted on defendant's misrepresentations in Illinois, but the complaint itself is silent on the issue.

[3] Plaintiff claims in its response that it received many of the alleged misrepresentations by defendant in Illinois, but there are no allegations in the complaint that any was received there.

[4] Plaintiff claims in its response that contract negotiations took place in Illinois, and that it signed the contract here, but again the complaint itself is silent on these points.

[5] The Master Research and Development Agreement provides that plaintiff "specifically acknowledges that Battelle is a service provider."

work in Ohio, and therefore, the court will apply Ohio law to the breach of contract claim.

Finally, factors relevant to an evaluation of an unjust enrichment claim include the place where a relationship between the parties was centered, as long as the receipt of enrichment was substantially related to the relationship; the place where the enrichment was received; the place where the act conferring the enrichment was done; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where a physical thing which was substantially related to the enrichment was situated at the time of the enrichment. Restatement (Second) of Conflict of Laws § 221(2) (1971). The place where a relationship between the parties was centered is the factor that is given the greatest weight. Id. cmt. d. The relationship between the parties was centered in Ohio, where the misrepresentations were made that led to the enrichment, and where defendant's work was performed. The complaint is silent as to where payment by plaintiff to defendant was made.[6] Again, Ohio is the state with the most significant relationship in relation to the unjust enrichment claim, and the court will apply Ohio law to that claim as well.

**B.    Fraud and Negligent Misrepresentation (Counts I and II)**

Defendant argues that plaintiff's fraud and negligent misrepresentation claims should be dismissed because they do not allege damages independent of those alleged in its breach of contract claim. Ohio law has long held that the existence of a contract action generally excludes the opportunity to present the same case as a tort claim. See Ketcham v. Miller, 136 N.E. 145 (Ohio 1922). "It is not a tort to breach a contract, no matter how willful or malicious the breach." The Salvation Army v. Blue Cross & Blue Shield of N. Ohio, 636 N.E.2d 399, 403 (Ohio Ct. App. 1993). A breach of contract action may not be transformed into a tort action by adding adverbs such as "intentionally," "wilfully," and "fraudulently." Id. Thus, for a plaintiff to maintain claims under both breach of contract and tort, it must show a breach of a legal duty

---

[6] Plaintiff claims in its response to the motion to dismiss that payment was issued to defendant in Illinois, but no allegation in the complaint supports that assertion.

independent of the contractual duty. Teknol, Inc. v. Buechel, 1999 WL 33117391, at *4 (S.D. Ohio Aug. 9, 1999); Cincinnati Gas & Elec. Co. v. General Elec. Co., 656 F. Supp. 49, 63 (S.D. Ohio 1986); Bowman v. Goldsmith Bros. Co., 109 N.E.2d 556, 557 (Ohio Ct. App. 1952).

In this case, plaintiff's negligent misrepresentation and fraud claims are intertwined with its breach of contract claim. The breach of contract claim alleges that defendant breached the Master Research and Development Agreement by:

> failing to provide a high standard of professional services on a best efforts basis in characterizing the chemical constituents of PURIZER's technology; assessing and describing the comparative effectiveness of the PURIZER Vapor and ozone; and designing and implementing experimental applications of the technology.

The negligent misrepresentation and fraud claims allege that defendant misrepresented the chemical components of the Purizer Vapor and its effectiveness compared to ozone. The relationship between plaintiff and defendant is contractual, and is not based in some independent legal source. Plaintiff therefore cannot maintain its negligent misrepresentation and fraud claims independent of its breach of contract claim.

In any event, the economic loss doctrine would also bar at least plaintiff's negligent misrepresentation claim.[7] Ohio law provides that a plaintiff cannot recover purely economic losses in a cause of action sounding in negligence. Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co., 537 N.E.2d 624, 635 (Ohio 1989). This rule applies to claims of negligent misrepresentation. Picker Int'l, Inc. v. Mayo Found., 6 F. Supp. 2d 685, 688-89 (N.D. Ohio 1998). Here, plaintiff seeks to recover damages for the costs it incurred in preparing to market the Purizer Vapor; it does not allege any personal injury or property damage occurring as a result

---

[7] The issue of whether the economic loss doctrine would bar a fraud claim appears to be unsettled under Ohio law. See Trgo v. Chrysler Corp., 34 F. Supp. 2d 581, 595 (N.D. Ohio 1998). Other states have come down on either side of the issue. Compare First Valley Leasing, Inc. v. Goushy, 795 F. Supp. 693, 699 (D. N.J. 1992) (New Jersey law does not bar parties with a Uniform Commercial Code claim from recovering fraud damages for purely economic loss) with Dinsmore Instrument Co. v. Bombardier, Inc., 199 F.3d 318, 320-21 (6th Cir. 1999) (Michigan law bars fraud claims for economic loss).

of defendant's representations. Ohio law bars plaintiff from recovering these economic losses through a negligent misrepresentation claim.

## C.   Breach of Contract (Count III)

Defendant argues that plaintiff waived its right to bring a breach of contract claim in a limitation of liability clause. This limitation of liability clause, contained in the Master Research and Development Agreement, provides:

> Purizer assumes all responsibility for its use, misuse, or inability to use the results of any task or Project performed pursuant to this Agreement, and in no event shall Battelle have any liability for damages, including but not limited to any indirect, incidental or consequential damages, arising from or in connection with this Agreement.

Although limitation of liability clauses are generally enforceable under Ohio law, they are ineffective where the defendant's misconduct was willful or reckless. Berjian, Inc. v. Ohio Bell Tel. Co., 375 N.E.2d 410, 416-17 (Ohio 1978). Defendants contend that the breach of contract claim does not allege such willful or reckless misconduct. While this is true, plaintiff's fraud claim contains an allegation of willful and reckless misconduct. The court reads the complaint as a whole and in the light most favorable to plaintiff, and finds the allegations are sufficient to overcome defendant's motion to dismiss the breach of contract claim based on the limitation of liability clause.

## D.   Unjust Enrichment (Count IV)

Finally, defendant contends that plaintiff's unjust enrichment claim should be dismissed because Ohio law prohibits recovery under an unjust enrichment theory when a contract governs the relationship between the parties. Plaintiff responds that it has properly pled the claims as alternative theories. While it is true that plaintiff could not recover under both unjust enrichment and contract theories, see R.J. Wildner Contracting Co. v. Ohio Turnpike Comm'n, 913 F. Supp. 1031, 1043 (N.D. Ohio 1996), that fact does not prohibit plaintiff from pleading them in the alternative. See Fed. R. Civ. P. 8(e)(2) ("A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal [or] equitable ...

grounds.").

However, defendant further argues that the form of the complaint does not comport with alternative pleading requirements, noting that the unjust enrichment count incorporates by reference paragraphs alleging the existence of contracts. Other courts in this district have taken a similar view of the technical requirement of Rule 8(e)(2). See, e.g., Samuels v. Old Kent Bank, 1997 WL 458434, at *14-15 (N.D. Ill. 1997); Allied Vision Group, Inc. v. RLI Prof'l Techs., Inc., 916 F. Supp. 778, 782 (N.D. Ill. 1996). While a plaintiff need not use particular words to plead in the alternative, it must use a formulation from which it can be reasonably inferred that this is what it is doing. Holman v. Indiana, 211 F.3d 399, 407 (7th Cir.), cert. denied, 531 U.S. 880 (2000). The court agrees that if plaintiff intended to plead its unjust enrichment claim as an alternative theory to its breach of contract claim, it has not been sufficiently clear in its method. Accordingly, Count IV is dismissed without prejudice.

**ORDERED:** The motion to dismiss is granted with prejudice as to Counts I and II; granted without prejudice as to Count IV, and denied as to Count III. Plaintiff is given until January 22, 2002 to amend Count IV; failure to do so will result in its dismissal with prejudice.

ENTER:

George W. Lindberg
Senior United States District Judge

JAN 0 4 2001

DATED: _____

9